UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 2:07-CR-35 |
| | ) | |
| JOHN PERRY RYAN, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS**

NOW COMES, the United States of America, by and through its attorney, Thomas D. Anderson, United States Attorney for the District of Vermont, and hereby submits this opposition to defendant's Motion to Suppress. For the reasons that follow, along with any testimony that may be adduced at hearing, defendant's Motion should be denied.

**I.  STATEMENT OF FACTS**

On March 12, 2007, Special Agent Jamie West of Immigration and Customs Enforcement (ICE), obtained a warrant from the Honorable Jerome J. Niedermeier to search the residence located at 948 Duclos Road in Braintree, Vermont (the defendant's residence). Def's Mot. Ex. B. In support of the warrant, Agent West provided the Magistrate with an application and affidavit for search warrant. Def's Mot. Ex. A. The items to be seized were fully outlined and described in application and affidavit. Id. In the warrant however, the items to be seized were not described. Def's Mot. Ex. B. Instead, in the space on the warrant where this information should have been located, the words "948 Duclos Road Braintree Vermont" appear. Id.

Agents from ICE executed the search warrant on March 14, 2007. The items seized

during the search warrant were consistent with the items requested in both the application and affidavit. There is no dispute (nor has it been alleged) that the agents in any way seized evidence that exceeded the scope of what was requested in the application and affidavit.

At the conclusion of the search, a forensic examination of the computers seized from the defendant's residence was conducted. According to the forensic report, over 25,000 images and videos of child pornography were found on the computers seized.[1]  All of these images and videos were found either inside the folder entitled "John R" or as part of the Google Hello program installed on the computer. A large number of these images depict infants and toddlers being sexually abused. Some of these images depict children being subjected to bondage and sadomasochism.

Also found on the computer were numerous chat logs recovered from the Google Hello program. As described in the affidavit to the search warrant, using the name "baitor," defendant used this online chat program to trade child pornography. Def's Mot. Ex. A, ¶¶ 25-34. Inside the computer's Google Hello chat logs, investigators discovered frequent conversations between baitor and other Google Hello users that discussed the sexual abuse of children. In one particularly graphic chat,[2] baitor discusses the violent sexual abuse of children with the user "lololo1" and indicates:

> [Y]ou can really get into any age cunt if you don't mind hurting them . . . . I want to punch and beat them2.

---

[1] A complete copy of this report has been provided to the defense and the defense has had the opportunity to view the images found on defendant's computer. A copy of this report is available to the Court at its request.

[2] A complete copy of this chat will be provided to the Court at the Court's request. A copy of this chat was previously provided to the defense.

Baitor then asks lololo1 for "snuff."[3] When lololo1 indicates he does not have any, baitor responds:

> me either - i meant snuff em to show what real abuse is . . . . i think
> that you and me snuffing one would be the ultimate so far . . . . i
> heard it takes about 8 minutes to suffocate a 12 yo cunt with
> pumping her throat with your cock and holding it there.

On November 14, 2007, defendant filed a Motion to Suppress. In support of his motion, defendant argues the following: 1) that the warrant failed to specify the property to be seized; 2) that the affidavit failed to establish probable cause; and 3) that the information supporting the warrant was stale.

Upon reviewing the motion to suppress, the undersigned, along with Agent West, learned for the first time of the defect on the face of the warrant. At the time the warrant was obtained, neither the agent, nor the undersigned, nor the Magistrate, realized the items to be seized were not fully described in the warrant.

**II.   ARGUMENT**

*A.    The Exclusionary Rule Does Not Apply In This Case.*

As a preliminary matter, the government concedes that a violation of the Fourth Amendment occurred in this case. The warrant was invalid on its face because the warrant failed to identify the items to be seized.

The issue however is not whether a violation occurred, but whether the evidence should be suppressed. Two reasons exist why the exclusionary rule does not apply in this case: 1)

---

[3] "Snuff" refers to a genre of explicit pornography where a sexual act culminates in the actual violent death of a participant.

because suppression of the evidence would not serve the interests protected by the Fourth Amendment's particularity requirement; and 2) because the societal cost would be considerable compared to any minimal deterrence obtained from applying the rule.  Each argument will be addressed in turn.[4]

        1.    <u>Suppressing the evidence in this case would not further the purpose of the Fourth Amendment's particularity requirement</u>.

In analyzing application of the exclusionary rule, the critical question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  <u>Hudson v. Michigan</u>, 126 S.Ct. 2159, 2164 (2006) (<u>quoting</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-488 (1963)).  According to the Court in <u>Hudson</u>, attenuation from the primary taint can occur in situations where "the interest protected by the constitutional guarantee . . . would not be served by suppression of the evidence obtained."  <u>Id</u>.  If attenuation from the primary taint exists, the application of the exclusionary rule is inappropriate.  <u>See e.g.</u>, <u>United States v. Ceccolini</u>, 435 U.S. 268, 279 (1978) ("The penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve.")

Here, the purpose of the particularity requirement in the Fourth Amendment is not furthered by suppressing the evidence.  The particularity requirement serves to prevent general

---

[4] In his motion, defendant spends ample time discussing <u>Groh v. Ramirez</u>, 540 U.S. 551 (2004) and urges that based on <u>Groh</u>, the evidence in this case should be suppressed.  However, <u>Groh</u> is not an exclusionary rule case and does not discuss whether the exclusionary rule would even apply.  As such, the government will limit its discussion to case law interpreting application of the exclusionary rule.

warrants and "to make sure that a search pursuant to a warrant does not invade the property and privacy of the individual . . . beyond what is necessary to achieve a valid law enforcement purpose as determined by a judicial officer." United States v. Stefonek, 179 F.3d 1030, 1033 (1999) (Posner, J.). The particularity requirement accomplishes this purpose in two steps: 1) by requiring a law enforcement officer to submit to a judicial officer a precise description of what is sought to be seized so the judicial officer can ensure that a valid purpose exists for the seizure of those items; and 2) by requiring the law enforcement officer to incorporate that description into the warrant. Id. at 1032.

In this case, the agents failed the second step, that is, they failed to incorporate the description of the items to be seized into the warrant. This failure however does not harm any interest sought to be protected by the Fourth Amendment. A review of the Stefonek case demonstrates this point.

In Stefonek, law enforcement officers applied for a warrant and described the items to be seized in the application and the affidavit supporting the application. Id. The warrant correctly identified the place to be searched, but did not describe the items to be seized. Instead, the warrant merely sought "evidence of crime." Id. Despite finding a Fourth Amendment violation based on this description, the court did not apply the exclusionary rule to suppress the evidence. Id. at 1033. The court reasoned that because the items were fully described in the application and affidavit, and law enforcement officers did not go outside the scope of that application when they searched the property, the violation did no harm to any interest protected by the Fourth Amendment. Id. at 1034.

The facts of this case essentially mirror the facts in Stefonek. Here, there is no dispute

that the application and affidavit supporting the warrant fully described the items to be seized - the sole issue is that this same description did not appear on the face of the warrant. In addition, the agent who prepared the application for the warrant was among the agents who executed the warrant. There is no dispute that the search and seizure was exclusively limited to the items described in the affidavit and application.

Given these facts, suppression in this case would not serve the interests of the Fourth Amendment particularity requirement. The agents received prior authorization from the Magistrate that probable cause existed to search the residence for the items listed in the application and affidavit and absent the clerical error on the face of the warrant, the exact same evidence would have been seized in the exact same manner. See e.g., id. at 1035 ("We *know* that if the warrant had complied with the Fourth Amendment, the very same evidence would have been seized as was seized, because we know that Magistrate Judge Gorence intended to permit the search and seizure that occurred; it was the very search and seizure specified in the application for the warrant that she issued.") (emphasis in original). Thus, because the Fourth Amendment violation in this case "had no causal relation to the scope of the search or to the quantity or character of the evidence seized, suppression of the evidence is not a proper sanction." Id. at 1036.

> 2. Any deterrent value obtained from suppressing the evidence in this case would not outweigh the substantial societal cost.

"The exclusionary rule has never been applied except 'where its deterrence benefits outweigh its substantial social costs.'" Hudson, 126 S.Ct. at 2165 (quoting Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363 (1998)). Use of the exclusionary rule is unwarranted unless application of the rule would result in "appreciable deterrence." See United

States v. Janis, 428 U.S. 433, 454 (1976); see also United States v. Ajlouny, 629 F.2d 830 (2d Cir. 1980) ("[T]he Court, in recent years, has refused to apply the rule to situations where it would achieve little or no deterrence."); United States v. Bin Laden, 126 F. Supp 2d 264, 283 (S.D.N.Y. 2000) (refusing to apply exclusionary rule where deterrent purposes would not be furthered).  In assessing whether deterrence justifies the exclusion of evidence, the court should assess the motives of the officer who seized the challenged evidence.  Tirado v. Commissioner of Internal Revenue, 689 F.2d 307, 310 (1982).[5]  "This inquiry into the officer's motivation is the fundamental issue in translating the idea of deterrence into practical decision, for deterrence means modifying individual behavior."  Id.

Here, suppression of the evidence would have little deterrent value.  While the agents in this case were surely motivated by a desire to seize and search defendant's computer, the clerical error on the face of the warrant was exactly that - a clerical error.  The only possible effect exclusion of evidence would have on the agents would be to make them better editors.  However, given the nature of the error here, even suppression of the evidence would not avoid the same issue from happening again.  As stated by Justice Kennedy in Groh v. Ramirez:

> We all tend toward myopia when looking for our own errors.
> Every lawyer and every judge can recite examples of documents
> that they wrote, checked, and double checked, but that still
> contained glaring errors.

Groh v. Ramirez, 540 U.S. 551, 568 (2003) (Kennedy, J., dissenting).  This is not a case where an officer obtained a search warrant without probable cause such as in Leon.  This case is about human fallibility and no amount of deterrence can cure this innate human characteristic.

---

[5] Tirado is of limited application to this case given its distinguishing facts.

Even if deterrence exists however, the cost to society in excluding the evidence greatly outweighs any deterrent value. Not only would application of the rule subvert the truth seeking function of both the jury and the judge, see United States v. Payner, 447 U.S. 727, 734 (1980) ("[T]he exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury."), but suppression would amount to a "get-out-of-jail-free" card, Hudson, 126 S.Ct. at 2166, for a defendant who has a demonstrated dangerous interest in children. The search of defendant's computer has not only revealed his status as a substantial collector of child pornography, but it has also revealed his interest in the violent and fatal abuse of children. If the evidence is excluded and defendant is not held accountable, there is a very real likelihood that defendant's freedom may result in actual harm to additional children.[6] This societal cost far outweighs any deterrence gained by the exclusionary rule's application based on a clerical error.

  B.  *Search Warrant Contains Ample Probable Cause For Issuance Of The Warrant.*

Defendant argues that facts supporting the warrant were insufficient because the affidavit "may have described constitutionally-protected free speech when [it] referred to images that 'appear to be' minors engaged in sexually explicit conduct." Def's Mot. at 8. Defendant's argument fails to account for other the information in the affidavit and is therefore without merit.

The question of whether probable cause exists "requires a practical, common-sense

---

[6] While the charges in this case do not allege that defendant had inappropriate contact with children, defendant's voracious appetite for child pornography feeds the market that creates it. See e.g., United States v. Goldberg, 491 F.3d 668 (2007) ("The greater the customer demand for child pornography, the more that will be produced."); see also Child Pornography Prevention Act of 1996, Pub.L. No. 104-208 § 121, 110 Stat. 3009, 3009-27 (1996) ("[T]he existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.").

decision whether, given all the circumstances set forth in the affidavit before [the magistrate] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Martin, 426 F.3d 68, 74 (2d Cir. 2005) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The concept of probable cause turns on the "assessment of probabilities" and does not require "prima facie showing." Id.  When construing an affidavit to assess probable cause, the affidavit should be taken as a whole and construed realistically.  United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998).

In this case, the affidavit indicates that based on Agent West's experience, the photographs traded during the Google Hello chat session between "baitor" and "handycap" appeared to depict "prepubescent female minors engages in sexually explicit conduct, as defined in Title 18, Untied States Code Section 2256." Def's Mot. Ex. A, ¶ 27.  This statement appears after the affidavit recounts a chat that occurred between baitor and handycap.  The full text of that chat as it appears in the affidavit is as follows:

> handycap: hi
> baitor: what ages?
> handycap: send one you like
> handycap: young very
> baitor: what u like?
> baitor: nude and hc?
> handycap: yes
> baitor: 59/m/usa u?
> handycap: 52 m europe
> baitor is sending 2 pictures.
> Handycap is sending 2 pictures.
> baitor: how do u define "young very"
> handycap: yes sorry
> handycap: im so horny
> handycap: I prefer very very young
> baitor: but ur sending teens
> handycap: sorry I dleted all my very very young pics
> baitor: oh too bad

baitor: contact me when u get more

Def's Mot. Ex. A, ¶ 26.

From the text of the chat, it is apparent that handycap was looking for very young, "nude and hc[7]" pictures, and that baitor sent pictures in response to that request. Baitor even appears to become annoyed when handycap sends pictures of "teens" as opposed to the "very very young" pictures which he says he prefers. The chat ends with handycap indicating that he "dleted (sic) all my very very young pics." Baitor responds by saying "oh too bad . . . contact me when u get more."

Based on this chat, even if the description contained in paragraph 27 of the affidavit somehow fails to satisfy probable cause, the text of the chat clarifies exactly what was being traded. By admission of the two parties to the chat, the pictures traded were of very young children (consistent with the term "prepubescent" as used by Agent West). Baitor even asks to be contacted if or when handycap obtains more pictures of "very very young" children. This information taken as a whole provides ample probable cause to believe that images of child pornography as defined in 18 U.S.C. § 2256 would be found on defendant's computer.

Even if the Court determines the warrant was not supported by probable cause, the agents relied on the warrant in good faith and thus the exclusionary rule would not apply. The exclusionary rule does not apply to evidence seized in objective reasonable reliance on a warrant subsequently deemed invalid. United States v. Leon, 468 U.S. 897 (1984). The inquiry as to whether the good faith exception applies is "confined to the objectively ascertainable questions whether a reasonably well-trained officer would have known that the search was illegal despite

---

[7] In child pornography parlance, "hc" means "hard core."

the magistrate's authorization." United States v. Buck, 813 F.2d 588, 592 (2d Cir. 1987) (citing Leon, 468 U.S. at 922 n.3).  Only if the warrant was "so facially deficient - *i.e.*, failing to particularize the place to be searched or the things to be seized - that the executing officer could not reasonably presume it to be valid, would the good faith exception not apply." Leon, 468 U.S. at 923.

      Here, the good faith exception applies.  Judge Niedermeier carefully reviewed the proposed warrant, all supporting documents and signed the warrant.  Gates, 462 U.S. at 236 (A magistrate's "determination of probable cause should be paid great deference by reviewing courts.").  There is no evidence to suggest that a reasonable officer should have known the search was illegal.  Thus, even if this Court were to find probable cause lacking, the agent's good faith in executing the warrant precludes application of the exclusionary rule.

      C.    *Facts Supporting The Search Warrant Were Not Stale.*

      Defendant argues that because of the nine month lapse between the illegal conduct alleged in the affidavit and the issuance of the warrant, the information was stale and could not be used to support the warrant.  This argument is without basis.

      In assessing whether the information supporting a warrant is timely, courts must consider the age of the supporting facts, the nature of the illegal conduct and whether the affidavit depicts continuing or isolated instances of illegal conduct.  United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006).  Furthermore, "[w]hen a defendant is suspected of possessing child pornography, the staleness determination is unique because it is well known that 'images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes.'" Id. (quoting United States v. Lamb, 945 F.Supp. 441, 460 (N.D.N.Y. 1996) (citing cases)).

Here, the defendant was suspected of trading and possessing child pornography. People who have a sexual interest in children likely hoard illicit materials in their home and on their computers for long periods of time. Based on this information and given the nature of the offense in this case, a nine month lapse of time does therefore not violate the staleness rule. See e.g., United States v. Newsom, 402 F.3d 780, 783 (7th Cir. 2005) ("Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned."); see also United States v. Lacy, 119 F.3d 742, 745 (9th Cir.1997) (upholding search warrant based on information ten months old because "collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes"); United States v. Ricciardelli, 998 F.2d 8, 12 n. 4 (1st Cir.1993) (stating, "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years").

Based on the foregoing reasons defendant's Motion should be denied.

Dated at Burlington, in the District of Vermont, this 27th day of December, 2007.

        Respectfully submitted,

        UNITED STATES OF AMERICA

        THOMAS D. ANDERSON
        United States Attorney

By:   /s/ *Wendy L. Fuller*
      WENDY L. FULLER
      Assistant U.S. Attorney
      P.O. Box 570
      Burlington, VT 05402-0570
      (802) 951-6725